IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH KAY MARBURGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-745 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Senior Judge Alan N. Bloch |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Cathy Bissoon |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment (Doc. 14) be denied, and that Plaintiff's Motion for Summary Judgment (Doc. 9) be denied to the extent that it requests an immediate award of benefits, but granted to the extent that it seeks a vacation of the decision of the Commissioner of Social Security ("Commissioner"), and a remand for further administrative proceedings. It is further recommended that the Commissioner's decision be vacated, and that the case be remanded for administrative proceedings consistent with this Report and Recommendation.

### II. REPORT

**A.  Background**

Plaintiff Deborah Kay Marburger ("Marburger") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on February 23, 2006, alleging disability as of April 6, 2004. R. at 90, 95, 110. The applications were

administratively denied on November 7, 2006. R. at 68, 73. Marburger responded on November 17, 2006, by filing a timely request for an administrative hearing. R. at 78. On May 5, 2008, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge Douglas Cohen (the "ALJ"). R. at 32. Marburger, who was represented by counsel, appeared and testified at the hearing. R. at 35-60. Dr. Fred A. Monaco, an impartial vocational expert, also testified at the hearing. R. at 60-63.

In a decision dated July 8, 2008, the ALJ determined that Marburger was not "disabled" within the meaning of the Act. R. at 6-22. On September 9, 2008, Marburger filed a request for review with the Appeals Council, seeking administrative review of the ALJ's decision. R. at 5. The Appeals Council denied the request for review on April 2, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 2. Marburger commenced this action on May 28, 2010, seeking judicial review of the Commissioner's decision denying her applications for DIB and SSI benefits. Docs. 1 & 2. Marburger and the Commissioner filed Motions for Summary Judgment on October 1, 2010, and December 1, 2010, respectively. Docs. 9 & 14. These Motions are the subject of this Report and Recommendation, which is being submitted in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).

B.  **Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-

1191 (3d Cir. 1986). Congress clearly has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative

law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

### C.  The ALJ's Decision

In his decision, the ALJ determined that Marburger had not engaged in substantial gainful activity subsequent to her alleged onset date.[1] R. at 11. Marburger was found to be suffering from chronic venous insufficiency (and Factor V blood disorder), mood disorders, obesity, chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, and back disorders. R. at 12. These impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). R. at 12. The ALJ concluded that Marburger's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 12-13.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Marburger's residual functional capacity as follows:

---

[1] Marburger previously applied for DIB and SSI benefits, and her applications were administratively denied on July 9, 2004. R. at 111. She apparently took no further action with respect to those applications. In his decision, the ALJ determined that there was no basis for reopening those denials, and that they were binding on him. R. at 9. Therefore, the period of time considered by the ALJ commenced on July 10, 2004, and ended on July 8, 2008. R. at 6, 9, 22.

5

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary standing and walking and light lifting and carrying as defined in 20 CFR 404.1567(a) and 416.967(a). Namely, lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing/walking 2 hours; and sitting 6 hours in an 8-hour workday. She requires a self directed sit/stand option. She is capable of occasional balancing; kneeling; stooping; crouching; crawling; and climbing of ramps and stairs only. She must avoid even moderate exposure to dust; fumes; odors; gases; and environments with poor ventilation, dampness, and humidity. Claimant must avoid exposure to temperature extremes. The work must be limited to simple, routine, repetitive tasks, that are not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes.

R. at 13. Although Marburger had previously worked as a cook and waitress at a restaurant, the ALJ did not consider such work activity to be "substantial gainful activity."[2] R. at 20. Therefore, it was determined that Marburger had no "past relevant work."[3] R. at 20.

Marburger was born on March 31, 1959, making her forty-five years old on her alleged onset date and forty-nine years old on the date of the ALJ's decision. R. at 20, 90, 95. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had the equivalent of a high school education and an ability to communicate in English. R. at 35, 119; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Marburger could work as a bench assembler, product checker, or document preparer. R. at 21. Dr. Monaco's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[4] R. at 61-62.

---

[2] The criteria for determining whether work activity constitutes "substantial gainful activity" can be found in the Commissioner's regulations. 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] The Commissioner's regulations define the term "past relevant work" as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him or her] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d

D. <u>**Analysis**</u>

Marburger raises two basic arguments in support of her motion for summary judgment. First, she argues that the ALJ should have found her to be *per se* disabled under Listings 4.11, 4.12 and 1.04. Doc. 11 at 13-16. Second, she contends that the ALJ's residual functional capacity assessment and corresponding hypothetical question to Dr. Monaco were not "supported by substantial evidence." *Id.* at 16-19. Since a remand for further administrative proceedings is warranted based on Marburger's argument concerning the issue of *per se* disability, there is no need for the Court to address her second argument.

The Listing of Impairments describes impairments which preclude an individual from engaging in substantial gainful activity without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Although Marburger briefly references Listings 4.12 and 1.04, she focuses her argument on Listing 4.11. Doc. 11 at 13-16; Doc. 17 at 2-10. The specific language of Listing 4.11 reads as follows:

---

203, 205 (3d Cir. 2003). This burden commonly is satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

> 4.11 *Chronic venous insufficiency* of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
>
> A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.
>
> OR
>
> B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.11 (emphasis in original). Although the ALJ found Marburger to be suffering from chronic venous insufficiency, he did not evaluate that impairment under the medical criteria found in Listing 4.11. R. at 12-13. Marburger contends that the ALJ erred in failing to consider whether her chronic venous insufficiency rendered her *per se* disabled under this Listing. Doc. 11 at 13-16; Doc. 17 at 2-10.

In *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit declared that an administrative law judge may not dispose of the question of *per se* disability simply by stating that a claimant's impairments do not meet or medically equal a Listing, without identifying the particular Listings under consideration or providing sufficient analysis to facilitate meaningful judicial review. The Court of Appeals later clarified, in *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), that *Burnett* does not require an administrative law judge to "use particular language or adhere to a particular format in conducting his [or her] analysis." In his opinion, the ALJ thoroughly explained why Marburger's mental impairments did not meet or medically equal Listings 12.04 and 12.06. R. at 12-13. The Commissioner argues that Marburger is not

entitled to a remand in this case, since meaningful judicial review of the ALJ's determination is possible. Doc. 15 at 12-17.

Although the ALJ's thorough analysis at the third step of the sequential evaluation process was dissimilar to the conclusory disposition condemned by the Court of Appeals in *Burnett*, Marburger is not precluded from asserting that "the ALJ should have applied a different Listing." *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). Marburger was not required to identify the appropriate Listings for consideration during the course of the administrative proceedings. *Burnett*, 220 F.3d at 120, n. 2. That responsibility fell upon the ALJ. *Id.* Marburger was only required to "present medical findings" showing the she was *per se* disabled under the applicable Listings. *Id.* Thus, the relevant question is whether she presented sufficient evidence of *per se* disability under Listing 4.11 to trigger the ALJ's duty to conduct an analysis under that Listing. *Id.*; *Williams*, 970 F.2d at 1185-1186.

Marburger sought treatment at the Ohio Valley Wound Care Center ("WCC") on September 6, 2005, for a "necrotic wound" on her right calf. R. at 198. Dr. David B. Catalane presumed that the wound had been caused by a spider bite. R. at 198. His examination revealed that Marburger had edema in both of her legs. R. at 198. The wound was debrided, and some of the necrotic tissue was excised. R. at 198-199. It was determined that Marburger could not work between September 6, 2005, and November 1, 2005. R. at 185.

Marburger returned to the WCC on October 25, 2005, when she was examined by Dr. Paul Willis. R. at 197. At that time, the wound looked "relatively clean," but it needed to be debrided again. R. at 197. On November 8, 2005, Dr. Catalane reported that the wound was "showing continued improvement." R. at 196. Nonetheless, the wound required "some further

9

debridement of exudate eschar." R. at 196. Marburger was instructed to return to the WCC for further treatment two weeks later. R. at 196.

Despite Dr. Catalane's request that she return to the WCC within two weeks, Marburger let her wound go untreated for the next two and a half months. R. at 194. She went back to work on December 7, 2005. R. at 115. On February 16, 2006, Marburger sought further treatment at the WCC. R. at 194-195. Dr. Willis indicated that Marburger had previously stopped her treatment at the WCC "for multiple reasons unrelated to [her] care," and that her wound had "worsened" during the intervening period of time. R. at 194. The wound was "quite tender" on that occasion. R. at 194. Dr. Willis determined that "serial debridements" were required to get Marburger "back on track" with her healing. R. at 195. The debridement process was apparently "uncomfortable" for Marburger at that appointment. R. at 195.

In a treatment note dated February 23, 2006, Dr. Willis described the wound on Marburger's right calf as a "venous stasis ulcer." R. at 193. At that point, the wound was "cleaning up nicely." R. at 193. The debridement process resulted in "good granulation." R. at 193. Marburger was instructed to return to the WCC within one week for "serial debridement and other treatments." R. at 193.

Dr. Willis examined Marburger again on March 9, 2006. R. at 192. He reported that the wound on her calf was "getting smaller" with each visit. One week later, Marburger had "skin color changes" that Dr. Willis deemed to be "suggestive of venous stasis disease." R. at 191. The wound was debrided again, exposing "excellent granulation tissue" and causing Marburger to suffer only "minimal discomfort." R. at 191. Marburger was told to return to the WCC within two weeks. R. at 191.

On March 30, 2006, Dr. Willis indicated that Marburger's wound had healed. R. at 190. There were no signs of infection. R. at 190. It was recommended that Marburger continue to treat her leg with "compression." R. at 190. As of April 20, 2006, Marburger's "venous stasis ulcer" continued to look as if it had healed completely. R. at 189.

Marburger contacted Dr. Michael Fiorina, her primary care physician, on June 21, 2006. R. at 357. She informed him that her leg was "getting bad again," and that it was "starting to ulcerate." R. at 357. On July 17, 2006, Dr. Samuel I. Han performed a consultative physical examination of Marburger in connection with her applications for DIB and SSI benefits. R. at 200-208. Dr. Han found a "healed scar area" on Marburger's "right posterior calf," along with a "small puncture" wound on her "right lower leg." R. at 202. He described Marburger's toes as "purplish in color consistent with venous stasis." R. at 202.

By September 27, 2006, Marburger's wound was opening, and her toes were turning blue. R. at 358. Although Marburger was trying to work three days per week in order to address her financial needs, Dr. Fiorina instructed her to stop working for at least a week. R. at 358. An ultrasound venous imaging sonography conducted on September 29, 2006, revealed that Marburger was suffering from a "non-healing ulcer" on her right calf. R. at 248-249. It was noted that Marburger's "venous ulcer" had been present for over a year. R. at 256.

Marburger was hospitalized at Butler Memorial Hospital from January 10, 2007, through January 15, 2007, for "acute left-sided deep vein thrombosis." R. at 456. A physical examination conducted during the course of her hospital stay revealed that she had "venous ulcers" on her right leg. R. at 456. It was noted that Marburger was unable to work because of "chronic swelling" in her "right lower extremity." R. at 460. Dr. Fiorina strongly recommended that Marburger quit smoking, since nothing else could be done to improve her "blood flow."

R. at 456. Marburger apparently stated that she had been smoking to alleviate her stress. R. at 463.

In his opinion, the ALJ referred to Marburger's chronic venous insufficiency (and Factor V blood disorder) as her "most significant impairment," since it limited her ability to stand and walk. R. at 19. Despite the significance that he attached to this particular impairment, the ALJ never evaluated it under Listing 4.11. R. at 12-13. In the portion of his opinion discussing Marburger's residual functional capacity, the ALJ briefly stated that Marburger's wound had worsened only because of her failure to continue treatment, and that it had healed within two months of her return to the WCC. R. at 15. The Commissioner invites the Court to construe this portion of the ALJ's opinion as an implicit finding that Marburger's chronic venous insufficiency did not fail to heal within three months of "prescribed treatment" for purposes of Listing 4.11B. Doc. 15 at 15-17. The problem with this argument is twofold. First, the documentary evidence suggests that Marburger's "ulceration" did not actually heal within three months of treatment, since it continued to manifest itself long after it had supposedly "healed." R. at 189-190, 256, 357-358. Second, the ALJ never referenced Listing 4.11B's three-month durational requirement in his opinion, leaving a considerable degree of uncertainty as to whether he was even aware of it. R. at 15. At the hearing, Marburger testified that her ulcer had been misdiagnosed as a spider bite, and that it had continued to open up whenever she tried to work. R. at 38-39. Her testimony was consistent with some of the documentary evidence contained in the record.[5] R. at 357-358. Under these circumstances, further administrative proceedings are required to determine whether Marburger is *per se* disabled under Listing 4.11.

---

[5] It is axiomatic that the consistency between Marburger's testimony and the documentary evidence must be given serious consideration by the Commissioner on remand. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993).

42 U.S.C. § 405(g) provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Marburger suggests that the evidence "clearly" directs a finding of *per se* disability under Listing 4.11, that an immediate award of benefits is warranted, and that further proceedings need not be conducted. Doc. 17 at 10. In the present case, however, the proper remedy is a remand for further administrative proceedings. Marburger cannot show that she is *per se* disabled simply by demonstrating that she suffers from chronic venous insufficiency. *Wooten v. Apfel*, 108 F.Supp.2d 921, 924-925 (E.D. Tenn. 2000). Instead, she must satisfy the specific criteria found in Listing 4.11. *Id.* The question of *per se* disability is often a highly technical issue requiring input from medical experts. 20 C.F.R. §§ 404.1526(d), 416.926(d). The Commissioner is free to consult such experts in determining whether a claimant's impairments meet or medically equal a Listing. *Knepp*, 204 F.3d at 85-87. A reviewing court is limited to the record developed during the course of the administrative proceedings in question. *Matthews v. Apfel*, 239 F.3d 589, 592-596 (3d Cir. 2001). The record contains no evaluation of Marburger's condition under Listing 4.11. This question should be addressed by the Commissioner in the first instance.

Because Marburger is entitled to a remand on the ground that the ALJ failed to properly evaluate her impairments under Listing 4.11, the Court has no occasion to consider whether an additional ground for remand exists. *Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003). Specifically, the Court need not consider whether the ALJ should have evaluated Marburger's impairments under Listings 4.12 and 1.04, or whether the ALJ erred in determining Marburger's residual functional capacity. It suffices to say that Marburger should be afforded the opportunity

to address those issues on remand, and to submit additional evidence in support of her applications for DIB and SSI benefits. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010).

### E. Conclusion

It has not gone unnoticed that the ALJ's analysis in this case was very thorough, and that his opinion was prepared with great care. Nevertheless, it was the ALJ who characterized Marburger's chronic venous insufficiency as her "most significant impairment." R. at 19. Having recognized the significance of this particular impairment, the ALJ was required to evaluate it under the criteria found in Listing 4.11. *Burnett*, 220 F.3d at 120, n. 2. A careful review of the record reveals that Marburger has presented sufficient evidence of *per se* disability under Listing 4.11 to warrant a comprehensive evaluation of that issue. *Williams*, 970 F.2d at 1186. Accordingly, a remand for further administrative proceedings is required. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009).

It is respectfully recommended that the Commissioner's Motion for Summary Judgment (Doc. 14) be denied, and that Marburger's Motion for Summary Judgment (Doc. 9) be denied to the extent that it requests an immediate award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings. It is further recommended that the Commissioner's decision be vacated, and that the case be remanded to him for further proceedings.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by April 4, 2011. Failure to file objections will waive the right to appeal. *Brightwell v. Lehman*, -- F.3d --, 2011 WL 635274, *5 n.7 (3d Cir. Feb. 9, 2011). Responses to objections are due by April 21, 2011.

March 17, 2011
        s\Cathy Bissoon
        Cathy Bissoon
        United States Magistrate Judge

cc (via ECF email notification):

All Counsel of Record